# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KEVIN VARGAS,
an individual,

                                                    Case No.:

          Plaintiff,

v.

VERIZON WIRELESS (VAW) LLC,
a foreign limited liability company,
SUNRISE CREDIT SERVICES, INC.,
a foreign for-profit corporation,
COLLECTO, INC., d/b/a EOS CCA,
a foreign for-profit corporation,
ENHANCED RECOVERY COMPANY, LLC,
a foreign limited liability company,
EQUIFAX INFORMATION SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION, LLC,
a foreign limited liability company,

          Defendants.
_____/

## **VERIFIED COMPLAINT**

**COMES NOW**, Plaintiff, KEVIN VARGAS (hereinafter, "Plaintiffs"), by and through the

undersigned counsel, and hereby sues Defendants, VERIZON WIRELESS (VAW) LLC

(hereinafter, "VERIZON"), SUNRISE CREDIT SERVICES, INC. (hereinafter, "SUNRISE"),

COLLECTO, INC., d/b/a EOS CCA (hereinafter, "COLLECTO"), ENHANCED RECOVERY

COMPANY, LLC (hereinafter, "ENHANCED"), EQUIFAX INFORMATION SERVICES LLC

(hereinafter, "EQUIFAX"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter,

"EXPERIAN"), and TRANS UNION, LLC (hereinafter, "TRANSUNION") (hereinafter

collectively, "Defendants"). In support thereof, Plaintiff alleges:

1

## PRELIMINARY STATEMENT

This is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692a, *et seq.* (hereinafter, the "FDCPA"), the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et. seq.* (hereinafter, the "FCRA"), and for declaratory and injunctive relief in equity.

## JURISDICTION, VENUE & PARTIES

1.      Jurisdiction of this Court arises under 15 United States Code, Section 1692k(d), 15 United States Code, Section 1681 *et. seq.,* 28 United States Code, Section 1337 and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United State Code, Section 1367. Declaratory relief is available pursuant to 28 United States Code, Sections 2201 and 2202.

2.      Venue is proper in this District as the acts and transactions described herein occurred in this District.  At all material times herein, the conduct of Defendants, complained of below, occurred in Hillsborough County, Florida.

3.      At all material times herein, Plaintiff is an individual residing in Hillsborough County, Florida and is a "consumer" or a "debtor" as defined by 15 United States Code, Section 1681a(c), 15 United States Code, Section 1692a(3), and Florida Statutes, Section 559.55(8).

4.      At all material times herein, EXPERIAN is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.  EXPERIAN is subject to the jurisdiction of this Court as it transacts business in this District.

5.      At all material times herein, EXPERIAN is a consumer reporting agency as defined in 15 United States Code, Section 1681a(f) of the FCRA and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  EXPERIAN disburses such consumer reports to third parties

2

under contract for monetary compensation.

6.      At all material times herein, EQUIFAX is a Georgia corporation with its principal place of business located at 1550 Peachtree Street, NW, H-46, Atlanta, GA 30309.  EQUIFAX is subject to the jurisdiction of this Court as it transacts business in this District.

7.      At all material times herein, EQUIFAX is a consumer reporting agency as defined in 15 United States Code, Section 1681a(f) of the FCRA and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  EQUIFAX disburses such consumer reports to third parties under contract for monetary compensation.

8.      At all material times herein, TRANSUNION is a Delaware corporation with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.  TRANSUNION is subject to the jurisdiction of this Court as it transacts business in this District.

9.      At all material times herein, TRANSUNION is a consumer reporting agency as defined in 15 United States Code, Section 1681a(f) of the FCRA and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  TRANSUNION disburses such consumer reports to third parties under contract for monetary compensation.

10.     At all material times herein, VERIZON is a foreign limited liability company with its principal place of business located at One Verizon Way, VC52N058, Basking Ridge, NJ 07920.  VERIZON is subject to the jurisdiction of this Court as it transacts business in this District.

11.     At all material times herein, VERIZON is a person who furnishes information to credit reporting agencies as provided in the FCRA, 15 United States Code, Section 1681s-2.

12.     At all material times herein, SUNRISE is a foreign for-profit corporation with its

3

principal place of business located at 260 Airport Plaza, Farmingdale, NY 11735-3946.  SUNRISE is subject to the jurisdiction of this Court as it transacts business in this District.

13.     At all material times herein, ENHANCED is a foreign for-profit corporation with its principal place of business located at 8014 Bayberry Road, Jacksonville, FL 32256. ENHANCED is subject to the jurisdiction of this Court as it transacts business in this District.

14.     At all material times herein, COLLECTO is a foreign for-profit corporation with its principal place of business located at 700 Long Water Drive, Norwell, MA 02061. COLLECTO is subject to the jurisdiction of this Court as it transacts business in this District.

## GENERAL ALLEGATIONS

15.     At all material times herein, VERIZON is a "creditor" as defined by 15 United States Code, Section 559.55(5).

16.     At all material times herein, SUNRISE, ENHANCED, and COLLECTO are each a "debt collector" as defined by 15 United States Code, Section 1692a(6) and Florida Statutes, Section 559.55(7).

17.     SRS, ENHANCED, and COLLECTO each use interstate mail while engaging in a business the principal purpose of which is the collection of debts allegedly due another.  SRS, ENHANCED, and COLLECTO are each also an entity who regularly collects or attempts to, directly or indirectly, collect debts owed or due, or asserted to be owed or due, another from consumers in Hillsborough County, Florida.

18.     At all material times herein, Defendants VERIZON, SUNRISE, ENHANCED and COLLECTO attempt to collect a debt, including but not limited to, a balance allegedly due for cellular telephone services referenced by VERIZON account number ending in -0001, SRS reference number ending -8160, COLLECTO account number ending -8739, and ENHANCED

4

reference number ending -8664 (hereinafter, "Alleged Debt").

19.     At all material times herein, the Alleged Debt is a consumer debt, an obligation resulting from a transaction for goods or services and was incurred primarily for personal, household or family use.

20.     At all material times herein, VERIZON, SUNRISE, ENHANCED and COLLECTO are each a "person" subject to Florida Statutes, Section 559.72. *See* Florida Statutes, Section 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

21.     At all material times herein, the conduct of VERIZON, SUNRISE, ENHANCED and COLLECTO, with respect to the Alleged Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(2).

22.     At all material times herein, Defendants acted themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

23.     All necessary conditions precedent to the filing of this action occurred or have been waived by Defendants.

**STATUTORY STRUCTURE OF THE FCRA**

24.     Congress enacted the FCRA to require the consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  15 U.S.C. § 1681b.

25.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum accuracy* of the information concerning the individual about whom the report relates.  15 U.S.C. § 1681e(b) (emphasis added).

26.     Under the FCRA, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives the notice of dispute from the consumer. 15 U.S.C. § 1681i(a).

27.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. 15 U.S.C. § 1681i(a)(4).

28.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5).

29.     Under the FCRA, after a furnisher of information receives notification pursuant to §1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2) of this title; (C) report the

6

results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  15 U.S.C. § 1681s-2(b).

30.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer, is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; statutory damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorneys' fees.  15 U.S.C. § 1681n.

31.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer, is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorney's fees. 15 U.S.C. § 1681o.

## **FACTUAL ALLEGATIONS**

32.     In September 2012, an unknown third party opened an account for cellular telephone service with VERIZON using Plaintiff's name and social security number and listing 1775 York Avenue, Apartment 22B, New York, NY as the address of record for said account (hereinafter, "NY Address").

33.     Said third party failed to make payments on said account with VERIZON, resulting in the Alleged Debt.

34.     Beginning in April 2013, VERIZON began reporting the Alleged Debt as a

"collection account" to EQUIFAX, EXPERIAN, and TRANSUNION.  Please see attached a true and correct copy of the relevant pages of Plaintiff's EQUIFAX, TRANSUNION, and EXPERIAN Credit Reports as of September 17, 2014 (hereinafter, "First Credit Reports") labeled as Exhibit "A1-A20."

35.     Prior to September 15, 2014, VERIZON assigned the Alleged Debt to SUNRISE for collection, servicing, or both.

36.     Beginning in July of 2014 and continuing throughout August and September of 2014, SUNRISE placed regular phone calls to Plaintiff's home telephone for several weeks in an attempt to collect the Alleged Debt.  Plaintiff's wife, Amanda Vargas, attempted to answer several of these calls, but each time the caller would refuse to identify himself or herself and would only to speak to Plaintiff.  SUNRISE's employee or representative would terminate the call upon being informed of Plaintiff's absence.   In the event that Plaintiff's wife did not answer the phone, SUNRISE's employee or representative would leave a voicemail.

37.     Only a subset of the above-referenced voicemail messages included a disclosure that the unidentified caller worked for a debt collector, and none of said voicemail messages included SUNRISE's name.

38.     Furthermore, when Plaintiff's wife attempted to call back the number that appeared on Plaintiff's caller ID, the call would not go through.  Plaintiff's wife had to manually enter the same number, and was greeted by a request to speak with Plaintiff and again did not meaningfully disclose SUNRISE's identity or status as a debt collector.

39.     On or about September 15, 2014, SUNRISE again called Plaintiff's home telephone. SUNRISE's employee or representative would not speak to Plaintiff's wife, or provide her with any information about the caller's identity.

40.     During the immediately-aforementioned call, Plaintiff spoke to SUNRISE's employee or representative.

41.     When Plaintiff spoke with the immediately-aforementioned caller, SUNRISE's employee or representative refused to identify himself or herself, the purpose of the call, or any reference number or information until Plaintiff gave the caller his Social Security number or full address.  Plaintiff refused to give this personal identification information to an unknown person, and requested the caller identify himself or herself before Plaintiff disclosed said information. SUNRISE's employee or representative refused.  Plaintiff then ended the call.

42.     Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter, "Undersigned Counsel") on or about September 16, 2014 with respect to his debts generally, including the Alleged Debt.

43.     On or about September 17, 2014, Undersigned Counsel called SUNRISE and confirmed SUNRISE was the entity calling Plaintiff attempting to collect the Alleged Debt.

44.     SUNRISE informed Undersigned Counsel that the Alleged Debt resulted from a failure to pay for cellular telephone services for a Verizon Wireless account associated with telephone number 813.385.5305, allegedly initiated with VERIZON on September 10, 2012 (hereinafter "Contract Date").

45.     On or about September 17, 2014, Undersigned Counsel sent SUNRISE a facsimile transmission with Plaintiff's Limited Power of Attorney advising SUNRISE of Plaintiff's legal representation with respect to the Alleged Debt and providing SUNRISE with Undersigned Counsel's contact information.  Please see attached a true and correct copy of said facsimile transmission labeled as Exhibit "B1-B3."

46.     On or about September 17, 2014, as VERIZON's agent in collecting the Alleged

Debt, SUNRISE informed VERIZON of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt.

47.     On or about September 17, 2014, SUNRISE sent Undersigned Counsel a facsimile transmission enclosing a copy of SUNRISE's collection letter sent in an attempt to collect the Alleged Debt.  Said letter reflected the aforementioned NY Address as the mailing address.  Please see attached a true and correct copy of said fax labeled as Exhibit "C1-C3."

48.     On or about September 17, 2015, Plaintiff submitted an online dispute to EQUIFAX, referenced by EQUIFAX's confirmation number 4260049156, disputing the reporting of the Alleged Debt on his credit report.

49.     After receiving Plaintiff's online dispute, EQUIFAX notified VERIZON, EXPERIAN, and TRANSUNION of Plaintiff's dispute of the Alleged Debt.

50.     On or about September 29, 2014, EQUIFAX responded to Plaintiff's dispute, however, EQUIFAX continued to improperly report the Alleged Debt as belonging to Plaintiff, erroneously included the NY Address as one of Plaintiff's past addresses, and listed the disputed account as a "collection account."  Please see attached a true and correct copy of the relevant portion of EQUIFAX's response to Plaintiff's online dispute labeled as Exhibit "D1-D3."

51.     Further, on or about September 17, 2014, Plaintiff's wife contacted VERIZON's customer service department to advise VERIZON of the dispute of the Alleged Debt and ensure the fraudulent account would not affect the couple's good standing as current Verizon customers.

52.     During the immediately-aforementioned call, VERIZON's customer service representative repeatedly informed Plaintiff's wife that the Vargas' shared account had no outstanding balance, no history of late or missed payments, and that there was no reason Plaintiff would have any separate account other than his shared account covering the Vargas' home phone

and cellular telephones.

53.    When Plaintiff's wife provided VERIZON's representative with the account number of the Alleged Debt, however, VERIZON's representative located the account but advised Plaintiff's wife that the account had been "sold" and that any questions or concerns must be directed solely to SUNRISE.

54.    On or before January 9, 2015, VERIZON assigned the Alleged Debt to COLLECTO for collection, servicing, or both.

55.    When VERIZON assigned the Alleged Debt to COLLECTO, VERIZON informed COLLECTO of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information.

56.    On or about January 8, 2015, COLLECTO accessed/obtained Plaintiff's EXPERIAN credit report from EXPERIAN, which showed Plaintiff's dispute of the Alleged Debt, and continued to attempt to collect the Debt without confirming that it had the right to collect the Alleged Debt with VERIZON.  *See* Exhibit A14, A16, and A18.

57.    On or about January 9, 2015, COLLECTO sent Plaintiff a collection letter in an attempt to collect the Alleged Debt. Said collection letter was sent to Undersigned Counsel's address, evidencing that COLLECTO's actual knowledge of both Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information (hereinafter, "COLLECTO Collection Letter").  Please see attached a true and correct copy of the COLLECTO Collection Letter labeled as Exhibit "E1-E2."

58.    On or about January 22, 2015, Undersigned Counsel sent COLLECTO a letter via certified mail and facsimile transmission disputing the Alleged Debt, requesting verification of the Alleged Debt, demanding that all collection activity on the account cease, and directing all future

communication with respect to the Alleged Debt to Undersigned Counsel's office (hereinafter, "COLLECTO Dispute Letter").  Please see attached a true and correct copy of the COLLECTO Dispute Letter, fax confirmation sheet, and delivery confirmation labeled as Exhibit "F1-F3."

59.     On or about January 26, 2015, Plaintiff, via Undersigned Counsel, sent VERIZON, EQUIFAX, EXPERIAN, and TRANSUNION a dispute letter (hereinafter, "January Dispute Letter") via certified mail disputing the Alleged Debt, attaching documentation in support of said dispute, and requesting any information related to the fraudulently opened Alleged Debt be removed from his credit reports and files.  Please see attached a true and correct copy of the January Dispute Letter and certified mail return receipts labeled as Exhibit "G1-G3."

60.     EQUIFAX notified VERIZON of the January Dispute Letter, and VERIZON received said notice from EQUIFAX.

61.     EXPERIAN notified VERIZON of the January Dispute Letter, and VERIZON received said notice from EXPERIAN.

62.     TRANSUNION notified VERIZON of the January Dispute Letter, and VERIZON received said notice from TRANSUNION.

63.     On or about January 26, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information, COLLECTO called Plaintiff's parents from telephone number 1.855.974.6109 at least two times in an indirect attempt to collect the Alleged Debt from Plaintiff.

64.     During at least one of COLLECTO's immediately-aforementioned calls to Plaintiff's parents, COLLECTO's employee or representative "Mike" identified himself to Plaintiff's parents as a debt collector attempting to collect the Alleged Debt from Plaintiff.

65.     On or about February 12, 2015, EQUIFAX mailed Plaintiff its response to the

January Dispute Letter.  Said response advised Plaintiff "we verified that this item belongs to you," reported its findings as "account verified," continued to erroneously include the NY Address as one of Plaintiff's past addresses, and listed the disputed account as a "collection account."  Please see attached a true and correct copy of the relevant portion of EQUIFAX's response to the January Dispute Letter labeled as Exhibit "H1-H3."

66.     On or about February 26, 2015, TRANSUNION mailed Plaintiff its response to the January Dispute Letter and continued to report the Alleged Debt on Plaintiff's credit report as an "adverse account."   Please see attached a true and correct copy of the relevant portion of TRANSUNION's response to the January Dispute Letter labeled as Exhibit "I1-I2."

67.     On or about March 10, 2015, despite repeatedly receiving actual notice of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information, COLLECTO called Plaintiff from telephone number 1.877.384.0290 and left a voicemail message in an attempt to collect the Alleged Debt.

68.     On or before March 12, 2015, VERIZON assigned the Alleged Debt to ENHANCED for collection, servicing, or both.

69.     When VERIZON assigned the Alleged Debt to ENHANCED, VERIZON informed ENHANCED of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and also informed ENHANCED of Undersigned Counsel's contact information.

70.     All of ENHANCED's calls to Plaintiff, as more specifically described below, were placed from telephone number 1.800.725.7091, were made despite ENHANCED possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with regard to the Alleged Debt and Undersigned Counsel's contact information, and were placed on behalf of VERIZON and with VERIZON's knowledge, consent, and approval.

13

71.     On or about March 12, 2015, at approximately 8:30 a.m. ET, ENHANCED called Plaintiff's home telephone and left a voicemail message in an attempt to collect the Alleged Debt.

72.     On or about March 13, 2015, Undersigned Counsel sent ENHANCED a dispute letter via certified mail and facsimile transmission (hereinafter, "ENHANCED Dispute Letter"), disputing the Alleged Debt, requesting verification of the Alleged Debt, demanding that all collection activity on the account cease, and to direct all future communication with respect to the Alleged Debt to Undersigned Counsel's office.  Please see attached a true and correct copy of the ENHANCED Dispute Letter and fax confirmation sheet labeled as Exhibit "J1-J2."

73.     On or about March 22, 2015, VERIZON sent Plaintiff a letter denying his request for a change in the services for his valid account with Verizon due to a restriction placed on said valid Verizon account.  Please see attached a true and correct copy of said letter labeled as Exhibit "K."

74.     Between March 14, 2015 and March 24, 2015 ENHANCED called Plaintiff's home telephone twice and left voicemail messages in its attempts to collect the Alleged Debt.

75.     On or about March 30, 2015, Undersigned Counsel contacted VERIZON regarding the abovementioned restriction and was informed that Plaintiff would have to submit a fraud packet to support his claim and remove the restriction.  VERIZON made this request despite having already received such a packet of documentation with the January Dispute Letter.

76.     On or about April 3, 2015, Plaintiff, via Undersigned Counsel, again provided, via certified mail and facsimile transmission, VERIZON the requested documentation with a second dispute letter regarding the Alleged Debt (hereinafter, "April Dispute Letter").  Please see attached a true and correct copy of the April Dispute Letter, the fax confirmation sheet, and certified mail receipts labeled as Exhibit "L1-L4."

77.     On or about April 6, 2015, at approximately 10:11 a.m. ET, ENHANCED *again* called Plaintiff's home telephone and left a voicemail in an attempt to collect the Alleged Debt.

78.     On or about April 10, 2015, VERIZON's employee "Joshua" contacted Undersigned Counsel via e-mail requesting proof of Undersigned Counsel's power of attorney for Plaintiff in order to discuss the details of Plaintiff's dispute.  Undersigned Counsel responded the same day with the requested documentation, again providing VERIZON with actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and actual knowledge of Undersigned Counsel's contact information.  Please see attached a true and correct copy of the Limited of Power of Attorney and Authorization to Release Information labeled as Exhibit "M1-M2."

79.     On or about April 13, 2015, at approximately 10:41 a.m. ET, ENHANCED *again* called Plaintiff's home telephone and left a voicemail in an attempt to collect the Alleged Debt.

80.     On or about April 20, 2015, at approximately 10:51 a.m. ET, ENHANCED *again* called Plaintiff's home telephone and left a voicemail message in an attempt to collect the Alleged Debt.

81.     On or about April 21, 2015, VERIZON's employee "Joshua" contacted Undersigned Counsel and requested additional documents for VERIZON's investigation into the Alleged Debt as fraud.

82.     On or about April 24, 2015, Undersigned Counsel sent VERIZON the immediately-aforementioned requested documentation.  Please see attached a true and correct copy of Plaintiff's 2012 property tax statement reflecting a Florida residential address at the time the fraudulent account was opened, and Plaintiff's Florida Driver's License demonstrating his current Florida address, labeled as Exhibit "N1-N2."

83.     On or about April 27, 2015, at approximately 10:49 a.m. ET, ENHANCED *again* called Plaintiff's home telephone and left a voicemail message in an attempt to collect the Alleged Debt.

84.     On or about May 4, 2015, VERIZON's employee "Joshua" sent Undersigned Counsel's office an e-mail and advised Undersigned Counsel that VERIZON determined the Alleged Debt a fraudulent account and confirmed trade-line deletion of the account.  Please see attached a true and correct copy of said e-mail labeled as Exhibit "O."

85.     On or about May 4, 2015, at approximately 10:29 a.m. ET, despite repeated knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt, repeated knowledge of Undersigned Counsel's contact information, and VERIZON's determination of the account as fraudulent, ENHANCED *again* called Plaintiff's home telephone in an attempt to collect the Alleged Debt.

86.     On or about June 24, 2015, Undersigned Counsel sent ENHANCED a facsimile transmission *again* advising ENHANCED of Undersigned Counsel's legal representation of Plaintiff with respect to the Alleged Debt, *again* advising ENHANCED of Undersigned Counsel's contact information, and *again* advising ENHANCED that all communication with respect to the Alleged Debt must cease with Plaintiff directly and instead be directed to Undersigned Counsel's office (hereinafter, "ENHANCED Fax of Representation").  Please see attached a true and correct copy of the ENHANCED Fax of Representation and fax confirmation sheet labeled as Exhibit "P1-P4."

87.     On or about July 6, 2015, despite VERIZON's determination that the Alleged Debt was a fraudulent account, ENHANCED *again* called Plaintiff's home telephone in an attempt to collect the Alleged Debt.  ENHANCED placed the immediately-aforementioned call directly to

16

Plaintiff despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and possessing actual knowledge of Undersigned Counsel's contact information from VERIZON, the ENHANCED Dispute Letter, and the ENHANCED Fax of Representation.

88.     On or about July 31, 2015, despite VERIZON determining that the Alleged Debt was a fraudulent account, ENHANCED *again* called Plaintiff's home telephone in an attempt to collect the Alleged Debt.  ENHANCED placed the immediately-aforementioned call directly to Plaintiff despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and possessing actual knowledge of Undersigned Counsel's contact information from VERIZON, the ENHANCED Dispute Letter, and the ENHANCED Fax of Representation.

89.     As of August 7, 2015, all information regarding the Alleged Debt has been removed from Plaintiff's credit report by EQUIFAX, EXPERIAN, and TRANSUNION.  Please see attached a true and correct copy of the relevant page of Plaintiff's credit report showing zero "collection" accounts labeled as Exhibit "Q."

90.     On or about August 31, 2015, despite VERIZON determining that the Alleged Debt was a fraudulent account, ENHANCED *again* called Plaintiff's home telephone in an attempt to collect the Alleged Debt.  ENHANCED placed the immediately-aforementioned call directly to Plaintiff despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and possessing actual knowledge of Undersigned Counsel's contact information from VERIZON, the ENHANCED Dispute Letter, and the ENHANCED Fax of Representation.

91.     Plaintiff has not been able, due to both professional and personal commitments,  as

well as the continued and increasing stress associated with the continued barrage of Alleged Debt collection calls, to record the specifics (as done above) on each and every call made to Plaintiff by Defendant ENHANCED.   Plaintiff asserts, however, that the above-referenced calls are but a sub-set of the calls made in violation of the FCCPA and FDCPA. Further, Defendant ENHANCED is in the best position to determine and ascertain the number and methodology of calls made to Plaintiff.

92.     Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

93.     As a direct result of Defendants' actions, Plaintiff has suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, confusion and loss of sleep, believing that the hiring of an attorney for representation with respect to the Alleged Debt was wholly ineffective, Plaintiff's dispute of the Alleged Debt was wholly ineffective, and Defendants' repeated unlawful collection attempts would simply have to be endured unless Plaintiff paid a debt he did not owe.

94.     Florida Statutes, Section 559.77 provides for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiff should Plaintiff prevail in this matter against Defendants.

95.     United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, and an award of attorneys' fees, and costs to Plaintiff should Plaintiff prevail in this matter against Defendants.

96.     As of the date of this complaint, Defendants have not initiated a law suit in an effort to collect the Alleged Debt. Likewise, no final judgment regarding the Alleged Debt has been obtained by, or transferred to, Defendants.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## <u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(5)</u>

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

97.     COLLECTO is subject to, and has violated the provisions of, Florida Statutes, Section 559.72(5) by disclosing information affecting Plaintiff's reputation with knowledge or reason to know that the other person does not have a legitimate need for the information or that the information is false.

98.     Specifically, despite having been advised of Undersigned Counsel's representation of Plaintiff with regard to the Alleged Debt and possessing actual knowledge of Undersigned Counsel's contact information as demonstrated by COLLECTO mailing the COLLECTO Collection Letter to Undersigned Counsel's office, COLLECTO contacted Plaintiff's parents *at least* twice.

99.     During at least one of the immediately aforementioned calls, COLLECTO's employee "Mike" identified himself as a debt collector attempting to collect the Alleged Debt from Plaintiff.

100.    As COLLECTO was aware of Plaintiff's dispute of the Alleged Debt and that Plaintiff's parents had no legitimate need for any information regarding Plaintiff's alleged indebtedness, COLLECTO violated Florida Statutes, Section 559.72(5) when it contacted Plaintiff's parents and disclosed information about Plaintiff's alleged indebtedness to them.

101.    As a direct and proximate result of Defendant COLLECTO's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT TWO:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

102.    Defendants VERIZON, SUNRISE, COLLECTO, and ENHANCED are each subject to, and have each violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

103.    Specifically, SUNRISE called Plaintiff's home repeatedly over the course of several months and SUNRISE's employee or representative refused to identify himself or herself until Plaintiff provided personal information to an unidentified caller regarding an Alleged Debt he did not owe.

104.    Additionally, VERIZON subsequently assigned the Alleged Debt to COLLECTO and ENHANCED despite receiving Plaintiff's dispute of the Alleged Debt and that the account was fraudulently opened.

105.    Further, despite receiving actual notice of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and possessing actual knowledge of Undersigned Counsel's contact information—as further demonstrated by COLLECTO mailing the COLLECTO Collection Letter to Undersigned Counsel's office—COLLECTO, with VERIZON's knowledge, consent, and approval, contacted Plaintiff's parents *at least* twice identifying itself as a debt collector attempting to collect the Alleged Debt from Plaintiff.

106.    Moreover, despite receiving actual notice of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and possessing actual knowledge of Undersigned

Counsel's contact information, ENHANCED—with VERIZON's knowledge, consent, and approval—continued to call Plaintiff's home telephone in attempts to directly collect the Alleged Debt from Plaintiff; even after VERIZON conducted its investigation and determined the Alleged Debt was fraudulent.

107.    Despite possessing knowledge of Plaintiff's dispute of the Alleged Debt as early as September 17, 2014, VERIZON permitted and requested collection activity on the Alleged Debt continue for over seven months.  In fact, ENHANCED called Plaintiff in an attempt to collect the Debt on the very same day Defendant VERIZON's employee "Joshua" notified Undersigned Counsel VERIZON determined the Alleged Debt as the result of fraud, and continues to call Plaintiff directly attempting to collect the Alleged Debt.

108.    Defendants VERIZON's, SUNRISE's, COLLECTO's, and ENHANCED's willful and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

109.    As a direct and proximate result of VERIZON's, SUNRISE's, COLLECTO's, and ENHANCED's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT THREE:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

110.    Defendants VERIZON, SUNRISE, COLLECTO, and ENHANCED are each subject to, and have each violated provisions of, Florida Statutes, Section 559.72(9) by attempting

to collect the Alleged Debt with knowledge that the Debt is not legitimate or asserting the existence of the legal right with the knowledge that the right does not exist.

111.    Specifically, Plaintiff has never lived at the NY Address allegedly associated with the Alleged Debt and Plaintiff did not originate a contract for cellular phone service with VERIZON on the Contract Date.

112.    VERIZON, however, repeatedly asserted that the Debt was legitimate and that VERIZON had the legal right to collect the Alleged Debt from Plaintiff by continuing to report the Alleged Debt as belonging to Plaintiff to EQUIFAX, EXPERIAN, and TRANSUNION.

113.    Further, VERIZON repeatedly asserted that the Alleged Debt was legitimate and that it had the right to collect the Debt from Plaintiff when it assigned the Alleged Debt for collection, servicing, or both to SUNRISE, COLLECTO, and ENHANCED with knowledge that Plaintiff disputed the Debt.

114.    VERIZON, SUNRISE, COLLECTO, and ENHANCED each persisted in their above-referenced attempts to collect the Alleged Debt directly from Plaintiff despite Plaintiff advising said Defendants that the Alleged Debt was the result of fraud and Plaintiff and Undersigned Counsel continued to repeatedly advise said Defendants that the Alleged Debt was fraudulent and illegitimate.

115.    As the Alleged Debt is the result of fraud, Plaintiff never had any obligation under the Alleged Debt and every attempt to collect the Debt from Plaintiff by Defendants SUNRISE, COLLECTO, and ENHANCED following Plaintiff's notification to each of said Defendants that the Alleged Debt was the result of fraud, as described herein, constitutes an assertion of the legal right to collect the Debt from Plaintiff with the knowledge that such a right never existed.

116.    As a direct and proximate result of VERIZON's, SUNRISE's, COLLECTO's, and

ENHANCED's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT FOUR:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTION 559.72(15)

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

117.    Defendant SUNRISE is subject to, and has violated provisions of, Florida Statutes, Section 559.72(15) by refusing to provide adequate identification of himself or herself or his or her employer or entity he or she represents or works for when asked to do so by Plaintiff.

118.    Specifically, on or about September 15, 2014, Defendant SUNRISE's employee or representative called Plaintiff's home telephone and refused to identify himself or herself when asked to do so by both Plaintiff and his wife, and required that Plaintiff disclose his Social Security number or full address to an unknown caller before he or she would comply with Plaintiff's request.

119.    Furthermore, unknown employees or representatives of Defendant SUNRISE repeatedly called Plaintiff's home phone for several weeks prior to the above-referenced call and refused to provide any identification of the callers' identity or the callers' employer when asked to do so by Plaintiff's wife.

120.    As such, Defendant SUNRISE violated Florida Statues, Section 559.72(15).

121.    As a direct and proximate result of Defendant SUNRISE's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FIVE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

122.    Defendants VERIZON, COLLECTO, and ENHANCED are each subject to, and have each violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving actual notice that Plaintiff was represented by counsel with respect to the Alleged Debt.

123.    Specifically, VERIZON received notice of Undersigned Counsel's representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information when SUNRISE advised VERIZON of the same following SUNRISE's receipt of Undersigned Counsel's Limited Power of Attorney, and when it received the January Dispute Letter.

124.    Despite repeatedly receiving actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information, and in fact sending a letter addressed to Plaintiff to Undersigned Counsel's office, COLLECTO called Plaintiff—on VERIZON's behalf, and with VERIZON's knowledge, consent and approval—*at least* once in an attempt to collect the Alleged Debt directly from Plaintiff.

125.    Additionally, despite repeatedly receiving actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information, ENHANCED—on VERIZON's behalf, and with VERIZON's knowledge, consent and approval—called Plaintiff *at least* ten (10) times in attempts to collect the Alleged Debt directly from Plaintiff.

126.    As such, Defendants VERIZON, COLLECTO, and ENHANCED have each violated Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving actual notice that Plaintiff was represented by counsel with respect to the underlying Alleged Debt.

127.    As a direct and proximate result of VERIZON's, COLLECTO's, and ENHANCED's actions, Plaintiff has sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT SIX:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692c(a)(2)**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

128.    Defendants COLLECTO and ENHANCED are each subject to, and have each violated provisions of, 15 United States Code, Section 1692c(a)(2) by communicating directly with Plaintiff despite COLLECTO and ENHANCED each having knowledge that Plaintiff was represented by Undersigned Counsel and knowledge of Undersigned Counsel's contact information.

129.    Specifically, despite repeatedly receiving actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information, and in fact sending a letter addressed to Plaintiff to Undersigned Counsel's office, COLLECTO called Plaintiff directly *at least* once in an attempt to collect the Alleged Debt directly from him.

130.    Additionally, despite repeatedly receiving actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's

25

contact information, ENHANCED called Plaintiff directly *at least* ten (10) times in attempts to collect the Alleged Debt directly from him.

131.    As such, Defendants COLLECTO and ENHANCED have each violated 15 United States Code, Section 1692c(a)(2) by communicating directly with Plaintiff despite COLLECTO and ENHANCED each having knowledge that Plaintiff was represented by Undersigned Counsel and knowledge of Undersigned Counsel's contact information.

132.    As a direct and proximate result of COLLECTO's and ENHANCED's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

### COUNT SEVEN:
### FAIR DEBT COLLECTION PRACTICES ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1692c(b)

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

133.    Defendant COLLECTO is subject to, and has violated the provisions of, 15 United States Code, Section 1692c(b) by communicating, in connection with the collection of the Debt, with any person other than Plaintiff, his attorney, a consumer reporting agency, the creditor, the attorney of the creditor, or the attorney of Defendant COLLECTO.

134.    Specifically, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and possessing actual knowledge of Undersigned Counsel's contact information—as further demonstrated by COLLECTO mailing the COLLECTO Collection Letter to Undersigned Counsel's office—COLLECTO contacted Plaintiff's parents *at least* twice in an attempt to collect the Alleged Debt.

135.    During at least one of the immediately aforementioned calls, COLLECTO's employee or representative "Mike" identified himself as a debt collector attempting to collect the

Alleged Debt from Plaintiff.

136.    As such, Defendant COLLECTO violated 15 United States Code, Section 1692c(b) by communicating with Plaintiff's parents in an attempt to collect the Alleged Debt.

137.    As a direct and proximate result of Defendant COLLECTO's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT EIGHT:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692c(c)**

The Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

138.    Defendants COLLECTO and ENHANCED are each subject to, and have each violated the provisions of, 15 United States Code, Section1692c(c) by communicating with Plaintiff with respect to the Alleged Debt after Plaintiff notified COLLECTO and ENHANCED in writing that Plaintiff refused to pay the Alleged Debt or wished COLLECTO and ENHANCED to cease further communication with the Plaintiff where communication was not to advise the consumer that COLLECTO's and ENHANCED's efforts are terminating, to notify Plaintiff that COLLECTO, ENHANCED, or VERIZON may invoke specified remedies which are ordinarily invoked, or to notify Plaintiff that COLLECTO, ENHANCED, or VERIZON intends to invoke a specific remedy.

139.    Specifically, COLLECTO and ENHANCED each received written cease and desist letters, the COLLECTO Dispute Letter and ENHANCED Dispute Letter, respectively, following their initial attempts to collect the Alleged Debt from Plaintiff.

140.    Despite receipt of the COLLECTO Dispute Letter, COLLECTO communicated with Plaintiff directly in an attempt to collect the Debt *at least* once.

141.    Further, despite receipt of the ENHANCED Dispute Letter ENHANCED communicated with Plaintiff directly in an attempt to collect the Alleged Debt *at least* nine (9) times following receipt of the ENHANCED Dispute Letter.

142.    As such, COLLECTO and ENHANCED each violated provisions of 15 United States Code, Section 1692c(c) when they communicated with Plaintiff directly in an attempt to collect the  Alleged Debt following receipt of the COLLECTO Dispute Letter and ENHANCED Dispute Letter, respectively.

143.    As a direct and approximate result of COLLECTO's and ENHANCED's actions, Plaintiff sustained damages as defined by 15 United States Code, Section1692k.

**COUNT NINE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d(6)</u>**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

144.    Defendant SUNRISE is subject to, and has violated the provisions of, 15 United States Code, Section 1692d(6) by consistently contacting Plaintiff without meaningful, truthful disclosure of its identity.

145.    Specifically, unknown employees or representatives of SUNRISE repeatedly called Plaintiff's home phone for several weeks refused to provide any identification of the callers' identity or the callers' employer when asked to do so by Plaintiff's wife.

146.    Furthermore, during the September 15, 2014 call, SUNRISE's employee or representative refused to identify himself or herself when asked to do so by both Plaintiff and his wife and required that Plaintiff disclose his Social Security number or full address to an unknown caller before he or she would comply with Plaintiff's request.

28

147.   Simply disclosing that the message is from a debt collector, without disclosing the name of the debt collector, is not enough to constitute "meaningful disclosure" under the FDCPA. *See Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F.Supp.2d 1104, 1112 (C.D.Cal.2005) (finding a violation of FDCPA Section 1692d(6) where the defendant's employees failed to disclose the defendant's identity **and** the nature of the defendant's business in messages left on plaintiff's answering machine) (emphasis added).

148.   As such, SUNRISE violated 15 United States Code, Section 1692d(6).

149.   As a direct and proximate result of SUNRISE's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT TEN:
## FAIR DEBT COLLECTION PRACTICES ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e(11)

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

150.   Defendant SUNRISE is subject to, and has violated the provisions of, 15 United States Code, Section 1692e(11) by using false, deceptive, or misleading representation or means in connection with the collection of the Debt.

151.   Specifically, SUNRISE failed to disclose in its initial oral communication with Plaintiff that SUNRISE is a "debt collector attempting to collect the Debt and any information obtained will be used for that purpose."

152.   Furthermore, SUNRISE failed to disclose in subsequent communications with Plaintiff, including the call to Plaintiff's home phone on September 15, 2014, that the communications were from a debt collector.

153.   SUNRISE's concealment of its identity as a debt collector constitutes deceptive and

29

misleading means to collect the Debt as it initially prevented Plaintiff from effectively disputing the Alleged Debt as Plaintiff had no way of verifying the legitimacy of the Alleged Debt or verifying SUNRISE's legal right to collect debts with appropriate regulatory authorities without SUNRISE's identity.

154.   As a direct and approximate result of SUNRISE's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT ELEVEN:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
<u>**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692f and f(1)**</u>

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

155.   Defendants SUNRISE, COLLECTO, and ENHANCED are each subject to, and have each violated the provisions of, 15 United States Code, Sections 1692f and f(1) by using unfair or unconscionable means to collect the Debt, including attempting to collect an amount (including interest, fees, charges, or expenses incidental to the principle obligation) not expressly authorized by the agreement creating the Debt or otherwise permitted by law.

156.   Specifically, as the agreement that created the Alleged Debt was fraudulently executed in Plaintiff's name by an unknown third party, SUNRISE, COLLECTO, and ENHANCED were not authorized to collect any amount on the Alleged Debt from Plaintiff.

157.   However, as described above, SUNRISE, COLLECTO, and ENHANCED each attempted to collect the full amount allegedly due on the Alleged Debt from Plaintiff despite numerous attempts by Plaintiff to advise said Defendants of the illegitimacy of the Alleged Debt.

158.   As such, SUNRISE, COLLECTO, and ENHANCED each violated 15 United States Code, Sections 1692f and f(1) by unfairly attempting to collect the full amount allegedly

due on the Debt from Plaintiff when Plaintiff was not a party to the agreement that created the Alleged Debt.

159.    As a direct and proximate result of SUNRISE's, COLLECTO'S, and ENHANCED's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT TWELVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 U.S.C. SECTION 1681e(b) BY DEFENDANT EXPERIAN**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

160.    EXPERIAN is subject to, and has violated the provisions of, 15 United States Code, Section 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

161.    Specifically, EXPERIAN willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the reporting of the Alleged Debt.

162.    EXPERIAN willfully or negligently failed, or both, to establish or follow reasonable procedures to assure that fraudulent accounts, such as the Alleged Debt, would not appear on Plaintiff's credit report.

163.    For example, EXPERIAN did not search any records to independently verify VERIZON's assertions that payments had not been made by Plaintiff and that the Alleged Debt was Plaintiff's, despite its assertions to the contrary.

164.    Further, EXPERIAN willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit file regarding reinvestigating Plaintiff's disputes of the inaccuracies in his credit report.

165.    EXPERIAN knows that its methods of processing consumer disputes do not comply with the requirements of the FCRA.

166.    Despite this knowledge, EXPERIAN continues to ignore the FCRA requirements concerning consumer disputes because noncompliance is a more cost-effective and profitable way for it to conduct business.

167.    EXPERIAN's violations of 15 United State Code, Section 1681e(b) constitute negligent, or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, and attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

168.    EXPERIAN's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Plaintiff as stated herein. As a result, Defendant EXPERIAN is liable to compensate Plaintiff for the full amount of statutory and actual damages, along with punitive damages, attorneys' fees and costs.

**COUNT THIRTEEN:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 U.S.C. SECTION 1681i(a)(1) BY DEFENDANT EXPERIAN**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

169.    EXPERIAN is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(1) by failing to conduct a reasonable reinvestigation of Plaintiff's disputes to

32

determine whether the disputed information was inaccurate and to subsequently update the information in Plaintiff's credit reports and credit file.

170.    Specifically, EXPERIAN willfully or negligently refused, or both, to properly reinvestigate the Plaintiff's consumer report upon receiving Plaintiff's disputes, as described above.

171.    In response to Plaintiff's disputes, EXPERIAN, through its outsource vendors in the Philippines, Chile, Costa Rica, and/or India, transmitted two-digit "dispute codes" in electronic ACDVs to VERIZON in accordance with EXPERIAN's standard investigation procedures.

172.    As noted above, EXPERIAN did not search any records to independently verify VERIZON's assertions that Plaintiff failed to make payments and was responsible for the Alleged Debt as reported by VERIZON.

173.    EXPERIAN's reinvestigations were not conducted in such a way as to assure the maximum possible accuracy of Plaintiff's consumer reports.

174.    By outsourcing its reinvestigation procedures and processes to low paid, low educated workers in foreign countries, EXPERIAN demonstrates that it is more concerned about profitability than conducting reasonable reinvestigations.

175.    Additionally, EXPERIAN's employees are evaluated and compensated not based upon accuracy of consumer liability reports, but rather on the sheer number of disputes completed.

176.    Notably, despite not performing a search of any records to independently verify VERIZON's erroneous assertions that Plaintiff failed to make payments on, and was responsible for, the Alleged Debt, EXPERIAN stated in its response to Plaintiff's dispute that "[i]f you still question an item, then you may want to contact the furnisher of the information directly or review the original information in the public record."

177.    The immediately-aforementioned statement by EXPERIAN suggests that late payments by Plaintiff could be verified by a review of the "original information in the public record."  Such a statement is false and evidences EXPERIAN's failure to conduct reasonable reinvestigations of Plaintiff's disputes.

178.    Further, even after Plaintiff and Undersigned Counsel sent EXPERIAN dispute letters regarding the erroneous reporting, EXPERIAN continued to report the Alleged Debt on Plaintiff's credit report.  *See* Exhibit G1-G3.

179.    EXPERIAN repeatedly reported that the Alleged Debt was Plaintiff's obligation, that Plaintiff had failed to make any payments on the Alleged Debt since September 2012, and that the Alleged Debt was a "collection account."

180.    The immediately-aforementioned information was inaccurate at all material times, as the Alleged Debt is the result of fraud.  Once VERIZON eventually did conduct its own investigation into the Alleged Debt, it concluded the Alleged Debt was the result of fraud.

181.    EXPERIAN's reinvestigations of Plaintiff's disputes were not conducted reasonably.

182.    EXPERIAN's reinvestigations of Plaintiff's disputes were not conducted in good faith.

183.    EXPERIAN's reinvestigation procedures are unreasonable.

184.    EXPERIAN's reinvestigations of Plaintiff's disputes were not conducted using all information reasonably available to EXPERIAN.

185.    EXPERIAN's reinvestigations were *per se* deficient by reason of these failures in EXPERIAN's reinvestigations of the Alleged Debt on Plaintiff's consumer report.

186.    EXPERIAN's actions in violating 15 United States Code, Section 1681i(a)(1)

constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, and attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOURTEEN:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 U.S.C. SECTION 1681i(a)(4) BY DEFENDANT EXPERIAN**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

187.    EXPERIAN is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

188.    EXPERIAN willfully or negligently failed, or both, to review and consider all information received in Plaintiff's disputes, including all relevant attachments.

189.    EXPERIAN's failure to review and consider all information received in Plaintiff's disputes, including all relevant attachments, was made in bad faith.

190.    EXPERIAN's actions in violating 15 United States Code, Section 1681i(a)(4) constitutes negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FIFTEEN:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 U.S.C. SECTION 1681i(a)(5) BY DEFENDANT EXPERIAN**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

191.    EXPERIAN is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes as inaccurate or could not be verified.

192.    EXPERIAN willfully and/or negligently failed to update or delete the information regarding the Alleged Debt that was inaccurate and could not be verified.

193.    EXPERIAN's actions in violating 15 United States Code, Section 1681i(a)(5) constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

194.    EXPERIAN's conduct was a direct and proximate cause, as well as a substantial factor, in causing Plaintiff serious injuries, damages, and harm as more fully stated herein.  As a result, EXPERIAN is liable to compensate the Plaintiff for the full amount of statutory, punitive, and actual damages, along with attorneys' fees and costs, as well as other relief as permitted by law.

## COUNT SIXTEEN:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 U.S.C. SECTION 1681e(b) BY DEFENDANT EQUIFAX

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

195.    EQUIFAX is subject to, and has violated the provisions of, 15 United States Code, Section 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

196.    Specifically, EQUIFAX willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the reporting of the Alleged Debt.

197.    EQUIFAX willfully or negligently failed, or both, to establish or follow reasonable procedures to assure that fraudulent accounts, such as the Alleged Debt, would not appear on Plaintiff's credit report.

198.    For example, EQUIFAX did not search any records to independently verify VERIZON's assertions that payments had not been made by Plaintiff and that the Alleged Debt was Plaintiff's, despite its assertions to the contrary.

199.    Further, EQUIFAX willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit file regarding reinvestigating Plaintiff's disputes of the inaccuracies in his credit report.

200.    Notably, despite not performing a search of any records to independently verify VERIZON's assertions that payments had not been made by Plaintiff and that the Alleged Debt was Plaintiff's, EQUIFAX stated in a response to Plaintiff's dispute that "if you still question an item, then you may want to contact the furnisher of the information directly or review the original information in the public record."

201.    The immediately-aforementioned statement by EQUIFAX suggests that the erroneous allegations of Plaintiff's failure to make payments and/or Plaintiff's ownership of the Alleged Debt could be verified by a review of the "original information in the public record." Such a statement is false and evidences EQUIFAX's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

202.    EQUIFAX knows that its methods of processing consumer disputes do not comply

37

with the requirements of the FCRA.

203.    Despite this knowledge, EQUIFAX continues to ignore the FCRA requirements concerning consumer disputes because noncompliance is a more cost-effective and profitable way for it to conduct business.

204.    EQUIFAX's violations of 15 United State Code, Section 1681e(b) constitute negligent, or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, and attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

205.    EQUIFAX's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Plaintiff as stated herein. As a result, EQUIFAX is liable to compensate Plaintiff for the full amount of statutory and actual damages, along with punitive damages, attorneys' fees and costs.

**COUNT SEVENTEEN:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 U.S.C. SECTION 1681i(a)(1) BY DEFENDANT EQUIFAX</u>**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

206.    Defendant EQUIFAX is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(1) by failing to conduct a reasonable reinvestigation of Plaintiff's disputes to determine whether the disputed information was inaccurate and to subsequently update the information in Plaintiff's credit reports and credit file.

207.    Specifically, EQUIFAX willfully or negligently refused, or both, to properly reinvestigate the Plaintiff's consumer report upon receiving Plaintiff's disputes, as described above.

208.    As noted above, EQUIFAX did not search any records to independently verify VERIZON's assertions that Plaintiff failed to make payments and was responsible for the Alleged Debt as reported by VERIZON.

209.    EQUIFAX's reinvestigations were not conducted in such a way as to assure the maximum possible accuracy of Plaintiff's consumer reports.

210.    Additionally, EQUIFAX's employees are evaluated and compensated not based upon accuracy of consumer liability reports, but rather on the sheer number of disputes completed.

211.    Notably, despite not performing a search of any records to independently verify VERIZON's erroneous assertions that Plaintiff failed to make payments on, and was responsible for, the Alleged Debt, EQUIFAX stated in its response to Plaintiff's dispute that "[i]f you still question an item, then you may want to contact the furnisher of the information directly or review the original information in the public record."

212.    The immediately-aforementioned statement by EQUIFAX suggests that late payments by Plaintiff could be verified by a review of the "original information in the public record." Such a statement is false and evidences EQUIFAX's failure to conduct reasonable reinvestigations of Plaintiff's disputes.

213.    Further, even after Plaintiff and Undersigned Counsel sent EQUIFAX dispute letters regarding the erroneous reporting, EQUIFAX continued to report the Alleged Debt on Plaintiff's credit report. *See* Exhibit G1-G3.

214.    EQUIFAX repeatedly reported that the Alleged Debt was Plaintiff's obligation, that Plaintiff had failed to make any payments on the Alleged Debt since September 2012, and that the Alleged Debt was a "collection account."

215.    The immediately-aforementioned information was inaccurate at all material times,

39

as the Alleged Debt is the result of fraud.  Once VERIZON eventually did conduct its own investigation into the Alleged Debt, it concluded the Alleged Debt was the result of fraud.

216.    EQUIFAX's reinvestigations of Plaintiff's disputes were not conducted reasonably.

217.    EQUIFAX's reinvestigations of Plaintiff's disputes were not conducted in good faith.

218.    EQUIFAX's reinvestigation procedures are unreasonable.

219.    EQUIFAX's reinvestigations of Plaintiff's disputes were not conducted using all information reasonably available to EQUIFAX.

220.    EQUIFAX's reinvestigations were *per se* deficient by reason of these failures in EQUIFAX's reinvestigations of the Alleged Debt on Plaintiff's consumer report.

221.    Defendant EQUIFAX's actions in violating 15 United States Code, Section 1681i(a)(1) constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, and attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT EIGHTEEN:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 U.S.C. SECTION 1681i(a)(4) BY DEFENDANT EQUIFAX

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

222.    EQUIFAX is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

223.    Defendant EQUIFAX willfully or negligently failed, or both, to review and consider all information received in Plaintiff's disputes, including all relevant attachments.

224.    EQUIFAX's failure to review and consider all information received in Plaintiff's disputes, including all relevant attachments, was made in bad faith.

225.    EQUIFAX's actions in violating 15 United States Code, Section 1681i(a)(4) constitutes negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

### COUNT NINETEEN:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 U.S.C. SECTION 1681i(a)(5) BY DEFENDANT EQUIFAX

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

226.    EQUIFAX is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes as inaccurate or could not be verified.

227.    EQUIFAX willfully and/or negligently failed to update or delete the information regarding the Alleged Debt that was inaccurate and could not be verified.

228.    EQUIFAX's actions in violating 15 United States Code, Section 1681i(a)(5) constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

229.    EQUIFAX's conduct was a direct and proximate cause, as well as a substantial factor, in causing Plaintiff serious injuries, damages, and harm as more fully stated herein.  As a result, Defendant EQUIFAX is liable to compensate the Plaintiff for the full amount of statutory, punitive, and actual damages, along with attorneys' fees and costs, as well as other relief as

permitted by law.

## COUNT TWENTY:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 U.S.C. SECTION 1681e(b) BY DEFENDANT TRANSUNION

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

230.    TRANSUNION is subject to, and has violated the provisions of, 15 United States Code, Section 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

231.    TRANSUNION willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the reporting of the Alleged Debt.

232.    TRANSUNION willfully or negligently failed, or both, to establish or follow reasonable procedures to assure that fraudulent accounts, such as the Debt, would not appear on Plaintiff's credit report.

233.    For example, TRANSUNION did not search any records to independently verify VERIZON's assertions that payments had not been made by Plaintiff and that the Alleged Debt was Plaintiff's, despite its assertions to the contrary.

234.    Further, TRANSUNION willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit file regarding reinvestigating Plaintiff's disputes of the inaccuracies in his credit report.

235.    TRANSUNION knows that its methods of processing consumer disputes do not comply with the requirements of the FCRA.

42

236.     Despite this knowledge, TRANSUNION continues to ignore the FCRA requirements concerning consumer disputes because noncompliance is a more cost-effective and profitable way for it to conduct business.

237.     TRANSUNION's violations of 15 United State Code, Section 1681e(b) constitute negligent, or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, and attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

238.     TRANSUNION's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Plaintiff as stated herein. As a result, TRANSUNION is liable to compensate Plaintiff for the full amount of statutory and actual damages, along with punitive damages, attorneys' fees and costs.

**COUNT TWENTY-ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 U.S.C. SECTION 1681i(a)(1) BY DEFENDANT TRANSUNION**

Plaintiff re-alleges paragraphs one (1) ninety-six (96) as if fully restated herein and further states as follows:

239.     TRANSUNION is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(1) by failing to conduct a reasonable reinvestigation of Plaintiff's disputes to determine whether the disputed information was inaccurate and to subsequently update the information in Plaintiff's credit reports and credit file.

240.     Specifically, TRANSUNION willfully or negligently refused, or both, to properly reinvestigate the Plaintiff's consumer report upon receiving Plaintiff's disputes, as described above.

241.     As noted above, TRANSUNION did not search any records to independently verify

VERIZON's assertions that Plaintiff failed to make payments and was responsible for the Alleged Debt as reported by VERIZON.

242.     TRANSUNION's reinvestigations were not conducted in such a way as to assure the maximum possible accuracy of Plaintiff's consumer reports.

243.     Additionally, TRANSUNION's employees are evaluated and compensated not based upon accuracy of consumer liability reports, but rather on the sheer number of disputes completed.

244.     Further, even after Plaintiff and Undersigned Counsel sent TRANSUNION dispute letters regarding the erroneous reporting, TRANSUNION continued to report the Alleged Debt on Plaintiff's credit report.  *See* Exhibit G1-G3.

245.     TRANSUNION repeatedly reported that the Alleged Debt was Plaintiff's obligation, that Plaintiff had failed to make any payments on the Alleged Debt since September 2012, and that the Alleged Debt was a "collection account."

246.     The immediately-aforementioned information was inaccurate at all material times, as the Alleged Debt is the result of fraud.  Once VERIZON eventually did conduct its own investigation into the Alleged Debt, it concluded the Alleged Debt was the result of fraud.

247.     TRANSUNION's reinvestigations of Plaintiff's disputes were not conducted reasonably.

248.     TRANSUNION's reinvestigations of Plaintiff's disputes were not conducted in good faith.

249.     TRANSUNION's reinvestigation procedures are unreasonable.

250.     TRANSUNION's reinvestigations of Plaintiff's disputes were not conducted using all information reasonably available to TRANSUNION.

251.     TRANSUNION's reinvestigations were *per se* deficient by reason of these failures in TRANSUNION's reinvestigations of the Alleged Debt on Plaintiff's consumer report.

252.     TRANSUNION's actions in violating 15 United States Code, Section 1681i(a)(1) constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, and attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT TWENTY-TWO:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 U.S.C. SECTION 1681i(a)(4) BY DEFENDANT TRANSUNION

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

253.     TRANSUNION is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

254.     Specifically, TRANSUNION willfully or negligently failed, or both, to review and consider all information received in Plaintiff's disputes, including all relevant attachments.

255.     TRANSUNION's failure to review and consider all information received in Plaintiff's disputes, including all relevant attachments, was made in bad faith.

256.     TRANSUNION's actions in violating 15 United States Code, Section 1681i(a)(4) constitutes negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

### COUNT TWENTY-THREE:
### FAIR CREDIT REPORTING ACT –
### <u>VIOLATION OF 15 U.S.C. SECTION 1681i(a)(5) BY DEFENDANT TRANSUNION</u>

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

257.    TRANSUNION is subject to, and has violated the provisions of, 15 United States Code, Section 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes as inaccurate or could not be verified.

258.    Specifically, TRANSUNION willfully and/or negligently failed to update or delete the information regarding the Alleged Debt that was inaccurate and could not be verified.

259.    TRANSUNION's actions in violating 15 United States Code, Section 1681i(a)(5) constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

260.    TRANSUNION's conduct was a direct and proximate cause, as well as a substantial factor, in causing Plaintiff serious injuries, damages, and harm as more fully stated herein.  As a result, TRANSUNION is liable to compensate the Plaintiff for the full amount of statutory, punitive, and actual damages, along with attorneys' fees and costs, as well as other relief as permitted by law.

### <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** as a direct and proximate result of the Defendants conduct, Plaintiff respectfully requests entry of:

a.    Judgment against VERIZON, SUNRISE, COLLECTO, and ENHANCED, declaring that each violated the FCCPA;

b.      Judgment against VERIZON, SUNRISE, COLLECTO, and ENHANCED, for maximum statutory damages for each Defendant's violations of the FCCPA;

c.      Judgment against VERIZON and ENHANCED for VERIZON's and ENHANCED's continued violations of the FCCPA;

d.      Judgment against SUNRISE, COLLECTO, and ENHANCED for maximum statutory damages for each Defendant's violations of the FDCPA;

e.      Judgment against Defendants VERIZON, EQUIFAX, EXPERIAN, and TRANSUNION for maximum damages for each Defendant's violations of the FCRA;

f.      Judgment against each Defendant for actual and punitive damages in amounts to be determined at trial;

g.      An award of reasonable attorneys' fees and costs; and

h.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this potential litigation as required by law.


                         Respectfully submitted,
                         **LEAVENLAW**

                         /s/ *Aaron M. Swift*
                         □ **Ian R. Leavengood, Esq., FBN 0010167**
                         **[X] Aaron M. Swift, Esq., FBN 0093088**
                         □ **Gregory H. Lercher, Esq., FBN 0106991**
                         □ **Sara J. Weiss, Esq., FBN 0115637**
                         Northeast Professional Center

3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone:  (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
aswift@leavenlaw.com
glercher@leavenlaw.com
sweiss@leavenlaw.com
*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA        )
                                 )
COUNTY OF Hillsborough    )

Plaintiff KEVIN VARGAS, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

KEVIN VARGAS

Subscribed and sworn to before me this 31 day of August, 2015.

Lynn E. Hathaway
Notary Public

My Commission Expires:

Proof of I.D.: personally known

LYNN E. HATHAWAY
Notary Public - State of Florida
My Comm. Expires Sep 17, 2017
Commission # FF 021974
Bonded Through National Notary Assn.

48